8897

PADGETT v. NORTH CAROLINA HOME INS. CO.

(82 S. E. 409.)

FIRE INSURANCE.  PROOF OF LOSS.  EVIDENCE.

1. The proof of loss need only conform substantially to terms of policy. Where insured furnished insurer with a sworn statement which set out the circumstances of the fire in question, and the insurer acted thereon without demand for any further or more particular "proof of loss," it waived any defects in the proof of loss furnished.

2. The sworn statement furnished the insurer by the insured in this case, stating the circumstances of the fire, as fully as they could be stated after a total destruction of the property insured, *held,* a sufficient compliance with the requirements of the policy.

3. The proof of loss furnished the insurer under stipulations in policy is not admissible as proof in Court. But the testimony in Court may refer to data stated in the application or policy at the time the contract of insurance was made. /

4. Where a wife holding the legal title to land in fee, undertook to convey same to her husband by an unwitnessed deed, the husband thereby acquired an equitable interest in fee; and the outstanding legal title in the wife was not a breach of the warranty of title in husband as insured.

5. The execution of a deed may be proven by its production, and proof of the grantor's signature or her acknowledgment that she had executed it.

6. Where the insurer or its agent has knowledge that a gin had been erected only about two months, and had shut down because of a defective engine, and was not being operated, when it wrote the policy of insurance, it thereby waived the express warranty in application for insurance, "that the property has been profitable, and the assured has every reason to believe that it will so continue."

7. The answer "owner," written in an application on behalf of the insured for insurance, by the agent of insurer, who then knew the gin in question had been shut down because of a defective engine, and was idle, to the question, "is the gin operated by owner, manager or tenant?" is not a warranty by assured that it is being then operated. But if a warranty was waived by the insurer's agent writing the policy with knowledge of the existing facts.

Before WILSON, J., Saluda, December, 1913.   Affirmed.

Action on a fire insurance policy, brought by W. D. Padgett and Gullett Gin Company against North Carolina

Home Insurance Company. From a judgment for plaintiffs, defendant appeals. The facts are stated in the opinion. The provisions of the policy as to proof of loss were as follows:

"If fire occur the insured shall give immediate notice of any loss thereby in writing to this company, protect the property from further damage, forthwith separate the damaged and undamaged personal property, put it in the best possible order, make a complete inventory of the same, stating the quantity and cost of each article and the amount claimed thereon; and, within sixty days after the fire, unless such time is extended in writing by this company, shall render a statement to this company, signed and sworn to by said insured, stating the knowledge and belief of the insured as to the time and origin of the fire; the interest of the insured and of all others in the property; the cash value of each item thereof and the amount of loss thereon; all incumbrances thereon; all other insurance, whether valid or not, covering any of said property; and a copy of all the descriptions and schedules in all policies; any changes in the title, use, occupation, location, possession, or exposures of said property since the issuing of this policy; by whom and for what purpose any building herein described and the several parts thereof were occupied at the time of fire; and shall furnish, if required, verified plans and specifications of any building fixtures, or machinery destroyed or damaged; and shall also, if required, furnish a certificate of the magistrate or notary public (not interested in the claim as a creditor or otherwise, nor related to the insured) living nearest the place of fire, stating that he has examined the circumstances and believes the insured has honestly sustained loss to the amount that such magistrate or notary public shall certify."

The statement of loss sent the company was as follows:

STATEMENT AND PROOF OF LOSS BY FIRE.

South Carolina, Saluda County.

To the North Carolina Home Insurance Company of Raleigh, N. C.:

You will take notice that the property described in your policy, No. 513508, was totally destroyed by fire about three o'clock of the morning of January 1st, 1913, the cause and origin of said fire being unknown to this deponent. The ownership and location of said property were as stated in said policy. The cash value thereof, the whole insurance and loss thereon, together with the insurance by and the claim upon you are as follows: Description of property—one frame wooden building as described in policy and one Gullett Gin System and Fixtures, 3 stand built and constructed by Gullett Gin Co., as described in policy, whole property having cash value of three thousand dollars and whole insurance in your company twenty-two hundred and fifty dollars and the whole of said property was destroyed and there was a total loss and the claim upon the insurance company, said The North Carolina Home Insurance Company of Raleigh N. C., is the sum of twenty-two hundred and fifty dollars, and the only encumbrance on the said property was a mortgage in favor of Gullett Gin Co., and there was no other insurance on the said property; the building referred to in said policy was occupied only as permitted therein, and said fire did not originate by any act, design, or procurement on the part of the insured or prohibited in said policy; and nothing has been done before or since the fire by said insured to violate any of the conditions of the said policy. There has been no change in the title, use, occupation, location, possession or exposures of said property since the issuing the said policy, and this claim and proof and notice is made pursuant to the terms of said policy. That all conditions and terms of policy have been complied with by undersigned, and facts set out in policy are hereby

adopted, and any fuller or further proof will be furnished on notice or demand.   W. D. Padgett.

"Sworn to and subscribed before me the 21st day of January, 1913.   C. J. Ramage, Notary Public for S. C. (Seal)."

The defendant's exceptions were as follows:

1. "It was an error in his Honor to allow the plaintiff to testify over the objection of the defendant as to the aggregate value of the machinery and personal property destroyed by the fire.   The error being:

(a) "The contract of insurance provides how the proof of loss shall be made up, and that the particular items destroyed by the fire, and covered by the policy and the cash value of each article destroyed shall be proven.

2. "The presiding Judge erred in admitting in evidence the paper marked exhibit 'B,' purporting to be a proof of loss.   The error being:

(a) "The contract of insurance provides the manner in which the proof of loss shall be made up, among other things provides that it shall state the several articles and the cash value of each item thereof and the amount of the loss thereon, and the paper introduced in evidence does not purport to do this.

3. "It was error in his Honor to allow the deed marked exhibit 'E' to be introduced in evidence without first examining the subscribing witnesses thereto.   The error being:

(a) "The only method by which a deed can be proven is by the subscribing witnesses, if they are alive and within the jurisdiction of the Court.

(b) "It does not appear that the subscribing witnesses were either dead or without the jurisdiction of the Court, but on the other hand it appears that they were alive and were within Saluda county.

4. "It was error to allow the witness, W. D. Padgett, to testify as to the interest which he held under the purported

deed, and to explain the manner in which the deed was made. The error being:

(a) "The deed itself was the highest evidence as to the character of the title held.

(b) "The testimony shows that the deed was not executed until after the fire, and the testimony as to the holding of the plaintiff under the deed prior to the fire was in conflict and contradictory of the paper itself and plaintiff's proof as to when it was executed.

(c) "The plaintiff should not have been allowed to attack and explain his own title and the conveyance under which he was holding.

5. "It was error in his Honor to allow the plaintiff and the witness, Merchant, to testify that the agent of the company knew that the machinery was idle when he wrote the policy of insurance. The error being:

(a) "That by his written application to the company, the plaintiff represented that the machinery was running, and he should not be allowed to contradict his written representation on which the policy was issued.

(b) "The testimony shows that the policy written at the time spoken of by the plaintiff and the witness, Merchant, was a policy in another company than the defendant and was cancelled because the machinery was not in operation, and the defendant could not be bound by the acts of the agent while representing some other company.

(c) "Plaintiff ought not to be allowed to falsify his written representation on which the policy was issued, and his warranty contained in the policy of insurance.

6. "It was error in the presiding Judge to allow the plaintiff to testify that the deed was signed on the 26th day of October, the error being:

(a) "The testimony contradicts the writing itself, in that the deed bears date August 27th.

(b) "The testimony contradicts plaintiff's own testimony showing that the deed was really executed sometime after the fire.

(c) "Plaintiff should not be allowed to attack the title under which he holds, or explain the execution of it.

7. "It was error in his Honor to refuse to direct a verdict in favor of the plaintiff on the first ground on which the motion was made, to wit:

1. "'As to the personal property, there is no testimony tending to show the loss in the manner provided by the policy. The policy provides this: The cash value of each item thereof, and the amount of loss thereon; all encumbrances thereon shall be proved. There is no testimony tending to show the separate items of the personal property destroyed by the fire, and we submit that there is a total failure of proof in this particular as required by the contract, to wit, the policy of insurance.' The error being:

(a) "The contract of insurance on which plaintiff's right to recover is based, provides that the proof of loss shall state the particular items of property destroyed and the cash value of each item thereof, and in proving the said loss the plaintiff was required, under the terms of the contract, to show the several items of property destroyed and the cash value thereof, and there was a total failure of testimony along this line.

(b) "The testimony of plaintiff, and all of the witnesses who testified thereon, was as to the aggregate value of the machinery, and there was no testimony to show what particular machines were destroyed by fire nor the cash value thereof.

8. "It was error in his Honor to refuse to direct a verdict for the defendant on the second ground on which the said motion was made, to wit:

2. "'The testimony shows that the land on which the building was located was not at the time of the fire vested in fee simple in the insured, Padgett, as required by the

terms of the policy, and in the warranty and in his written application for insurance by the plaintiff to whom the policy was issued, and as contained in the policy itself.'    The error being:

(a)  "The undisputed testimony shows that the title under which Padgett held the lands was executed after the fire and the title to the said property did not vest, under the said conveyance, in the said Padgett until after it was destroyed by the fire.

9.  "It was error in his Honor to refuse to direct a verdict for the defendant on the third ground on which the said motion was made, to wit:

3.  " 'The testimony shows, and from which there can only be one inference drawn, that there has been a breach of warranty, and thereby renders the policy of insurance null and void, in (a) it appears from the testimony that the property was idle property and was not operated; (b) that it was not profitable; (c) that the title to the property was not in the assured, and there is no competent testimony tending to establish waiver of these conditions or warranties.' The error being:

(a)  "The undisputed testimony shows that the plaintiff represented in writing to the defendant at the time the policy was issued that it was running and was not idle, when, in fact, the said property was idle and had not been running for some time.

(b)  "The policy warrants that the property was in use and operation, and the undisputed testimony shows that the said property was not in use and in operation, but was idle.

(c)  "The written application on which the policy was based shows that the property was profitable, and the undisputed testimony is that the said property was not profitable, but was idle and could not be used and plaintiff had no intention of using the same.

(d)  "The policy warrants that the property was profitable, and the undisputed testimony is that the said property

was not profitable, but was idle, and plaintiff had no intention of using the same.

(e) "That the written application on which the policy was based represents that the title to the said property was vested in fee simple in the said W. D. Padgett, and the undisputed testimony is that the said property was not so vested in the said Padgett.

(f) "The policy warrants that the title to the property was vested in the said W. D. Padgett in fee simple, and the undisputed testimony is that the title to the said property was not so vested in the said W. D. Padgett.

(g) "There was no competent testimony upon which the jury should have been allowed to pass as to the waiver of these written representations on the part of the plaintiff and the warranties contained in the said policy.

10. "It was error in his Honor to refuse to strike out the testimony of the witness, Padgett, undertaking to relate a conversation with Crymes, the alleged agent of the company, prior to the time this application was made and prior to the time the policy was written, the error being:

(a) "The conversation was inconsistent with and contradictory of the written application on which the policy of insurance was issued.

(b) "It contradicts and varies the terms of a written instrument, to wit, the application on which the policy was based.

(c) "The conversation relates to a time when the defendant, Crymes, was representing another company, and this defendant had no relation to the conversation and was not bound by the statements of the said Crymes as made while acting as agent of some other company.

11. It was error in his Honor to refuse to strike out the testimony of the witness, Merchant, detailing a conversation with the said Crymes, the error being:

(a) "The said conversation varies and contradicts the terms of the written application on which the policy of insurance was issued.

(b) "The conversation between Crymes and Merchant was as the agent of the Greensboro Insurance Company, and he was not then representing this defendant, or transacting any business for it, and this defendant ought not to be held liable on statements made by him, acting for some other company than it.

12. "It was error in his Honor to refuse to direct a verdict on the ground that no proof of loss was filed with the company, as required by the terms of the policy, the error being:

(a) "That the contract of insurance provides that a proof of loss shall be submitted to it, showing the particular items of property destroyed and the cash values of each item and the paper purporting to be a proof of loss does not undertake to show the particular items of personal property destroyed, nor the cash values thereof.

(b) "There was no testimony to show any waiver of this condition of the policy.

13. "The presiding Judge erred in charging the jury as follows:

" 'I also charge you that when an insurance policy, which is a contract, is entered into, that certain conditions in that policy, under certain circumstances, can be waived by the company or its duly authorized agent, notwithstanding the wording of the policy. It may say that you must do that or must not do that; if the authorized agent changes that in the scope of his authority, that is, in soliciting insurance and getting insurance contracts, if he does that in the scope of his authority, while acting for the company, why then the company is bound by his acts. I charge you that, and even where certain conditions in an insurance contract are to be fulfilled, if the company, by its agents (and when I say by its agents, through its agents) waives those conditions,

why the contract is gone,' and, in connection therewith, in charging the sixth request of the plaintiff, which is as follows:

6. " 'Knowledge of an insurance agent acting in the scope of his duties is notice to the company. That means this, that you have an agent employed to do a certain thing, you send him to do a certain thing, while he is acting in the scope of his duties he is your agent, your representative; when he goes beyond that, when he goes to do something you did not send him out to do, that is not within the scope of his duties, different from which you sent him out to do, then you are not bound, but when he is acting in the scope, or apparent scope of his duty, why he binds you," the error being:

(a) "There was absolutely no testimony in the case showing, or tending to show, any waiver of the terms and conditions and warranties contained in the said policy and in the application upon which the policy was based.

(b) "All of the conversations and acts of the agent of the insurance company, relied upon to show waiver in this case, occurred before the issuing of the policy, and all such conversations, acts and knowledge were merged in the written contract and cannot be taken advantage of to show waiver.

(c) "The charge had no application whatever to the facts of the case and allowed the jury to find that the conditions of the policy had been waived upon testimony which was not sufficient to support a waiver.

(d) "The conversations were with the agent while representing another company, and not while representing this defendant, and the statements and acts of the said agent could in nowise be held to be the statements or acts of this defendant.

14. "It was error in his Honor to charge the jury plaintiff's first request, which is as follows, to wit:

1. " 'That if an insurance company refuses to pay a loss under a policy issued by it, and denies liability on such policy upon the ground that the policy was forfeited for other reasons, this would be evidence for the jury to consider of the question of waiver of formal proofs of loss. I charge you that;' the error being:

(a) "There was absolutely no testimony in the case to show that the defendant had denied liability on the policy upon any ground whatever.

(b) "The only testimony tending to show why the defendant refused to adjust the loss is that the plaintiff refused to sign a nonwaiver agreement whereby the defendant could adjust the loss without waiving any of its rights.

(c) "Under the charge the jury were allowed to take into consideration the reasons set forth in defendant's answer for the denial of liability, and it was thereby deprived of its defense that proof of loss had not been filed in accordance with the terms of the policy.

15. "It was error in his Honor to charge plaintiff's second request that an equitable title gives an insurable interest in property, the error being:

(a) "The contract in this case provides that the insured shall have a fee simple title and not an equitable title.

(b) "The insured warranted his title to be that of a fee and not an equitable title.

16. "The presiding Judge erred in charging plaintiff's fifth request, as follows, to wit:

5. " 'This policy contains a great many stipulations, the breach of any of which would forfeit the policy, but the company may waive the forfeiture and thereby make the policy a good and valid policy, although the insured has violated some of its provisions which work a forfeiture, and the question of waiver is one for the jury. I charge you that;' the error being:

(a) "There is absolutely no testimony which shows or tends to show that the defendant waived any of the pro-

visions, conditions and warranties contained in the said policy.

(b) "All of the testimony upon which the plaintiff relies to show waiver was before the writing of the policy, and all such conversations are and were merged in the contract of insurance.

(c) "The conditions and warranties · upon which the defendant relied were based upon representations made by the plaintiff, in writing, to the defendant, and, for that reason, would not be the subject of waiver by any act of its agent prior to the issuing of the policy, and could only be waived by some act of the agent after the writing of the policy.

17. "The presiding Judge erred in refusing to charge defendant's second request to charge, which was as follows, to wit:

2. " 'The Court is requested to charge that under the terms of the policy in this case the machinery is only insured while in use, and the undisputed testimony shows that the personal property was not in use, therefore is not covered by this contract of insurance, and as to the personal property mentioned in the contract you must find for the defendant;' the error being:

(a) "The contract of insurance insures the machinery 'in use' and does not undertake to insure the machinery while not in use, and the undisputed testimony in this case shows that the said machinery was not in use at the time the fire occurred, but had been idle for some time previous thereto and was not covered by the contract of insurance.

(b) "At the time of the fire the policy of insurance did not cover the machinery in question, for the reason that the said machinery was idle, and under the express terms of the contract it is only insured while in use."

*Messrs. Grier, Park & Nicholson,* for appellant, submit: *Admission of testimony. Method of proof of loss pre-*

*scribed in policy exclusive:* 7 Enc. Ev. 561; 19 Cyc. 945.
*Paper furnished as proof of loss was an incompetent ex
parte statement by insured:* 56 Am. Rep. 637; 7 Enc. Ev.
573. *Waiver based on knowledge and acts of agent:* 36
S. C. 213; 48 S. C. 224; 52 S. C. 225, *distinguished.* Cites:
77 S. C. 187; 83 S. C. 236; 84 S. C. 95; 88 S. C. 31. *Agent
acting fraudulently in collusion with insured:* 50 S. C. 259;
77 S. C. 99. *Charge as to waiver:* 77 S. C. 187; 83 S. C.
236; 84 S. C. 95.

*Messrs. Thurmond & Ramage* and *B. W. Crouch,* for
respondent: *Sufficiency of proof of loss:* 19 Cyc. 850.
*Proof of deed:* 29 S. C. 170; 37 S. C. 102. *Proof of con-
sideration of deed:* 35 S. C. 537. *Deed created equitable
title:* 34 S. C. 416. *Vendee may prove execution:* 33 S. C.
241; 36 S. C. 608. *Title may be shown by parol testimony:*
36 S. C. 264. *Date of deed immaterial:* 35 S. C. 537. *Cir-
cumstances leading to execution of deed may be shown by
parol:* 57 S. C. 60; 66 S. C. 68; 68 S. C. 527. *Defendant
knew machinery was idle when it wrote policy:* 36 S. C.
264; 79 S. C. 526. *Notice to Crymes as agent:* 79 S. C.
526; 88 S. C. 37; 96 S. C. 187. *Retention of premiums
with knowledge of circumstances:* 56 S. C. 508; 61 S. C.
448; 63 S. C. 297. *Waiver of defects in proof of loss by
refusal to pay:* 29 S. C. 579; 70 S. C. 295. *Padgett's
equitable interest was insurable:* 23 S. C. 197; 19 Cyc. 584,
692; 64 S. C. 413; 96 Am. Dec. 582; 76 Am. Dec. 581;
71 Am. Dec. 536. *Warranty not implied:* 22 Am. Dec.
571. *Warranty as to title not broken:* Kerr Ins., p. 331;
31 Oregon 41; 117 Pa. St. 460; 33 L. R. A. 258. *Crymes
agency for defendant:* Civil Code, secs. 2711 & 2712; 16
Am. & Eng. Enc. of L. 908, 992; 1 May. Ins., sec. 70a; 57
S. C. 358; 60 S. C. 486; 80 S. C. 292; 19 Cyc. 781; 69
Am. St. Rep. 201; 76 Am. St. Rep. 111; 67 S. C. 399.
*Waiver:* 36 S. C. 213; 16 L. R. A. 33; 70 S. C. 82; 57 S.
C. 358; 143 U. S. 496; 55 S. C. 6; 67 S. C. 399; 51 S. C.

180; 37 S. C. 417; 57 S. C. 16; 54 S. C. 599; 14 A. & E. Ann. Cases 89; 63 S. C. 192; 25 L. R. A. (N. S.) 1, note; 80 S. C. 392; 143 U. S. 496; 51 S. C. 540; note 107 Am. St. Rep. 130; 70 S. C. 295; 48 S. C. 195; 79 S. C. 526; 81 S. C. 152; 74 S. C. 246.

July 17, 1914.

The opinion of the Court was delivered by MR. JUSTICE GAGE.

Action upon a fire policy of insurance. The property insured was a gin and house. The loss was total, building and machinery. The plaintiffs had a verdict for the full amount stipulated in the policy, which was $2,355.00.

The defendant appeals, and assigns seventeen errors. Of these six about the admission of incompetent testimony; two about the refusal to strike out testimony; four about a refusal to direct a verdict; five about the charge and the refusal to charge.

In our judgment, all the exceptions are without merit. The appellant has presented the case under three heads: (1) the admission of testimony; (2) the direction of a verdict, and (3) the charge; and this opinion will adopt that procedure, though not that order.

But, prior to such consideration, the setting of the case is best manifested by a history of the transaction.

The plaintiff, Padgett, is 55 years old, and never had a suit at law before this; he had purchased the gin plant on a credit, and the real solicitors of the insurance were the Gullet Gin Co., which had a $1,500.00 mortgage on the plant, and one Crymes, who sought the business as agent. It was stated at the bar that Crymes is a good man. Two companies had theretofore issued policies of insurance on the plant and then cancelled them. The second of these policies was secured and written by Crymes, the same who wrote the third, that is now in issue.

17—98.

Before the policy had been written the land upon which the house and machinery stood had belonged to W. D. Padgett's wife; but before the policy was issued she conveyed the same to him, by what is, in legal effect, and was, an unwitnessed deed, and this to conform to a rule of the company that the insured must own the property embraced in a policy.

The defendant insured a house and machinery therein against loss by fire; it got and retains the premium which was paid therefor; its agent knew when the policy was written that the house was at the time idle and unoccupied; its agent also knew that one or more policies upon the property had been cancelled aforetime; the good faith of the agent and of the insured is not impugned by pleading or testimony; the house was erected in the summer of 1912; the machinery then installed; the policy was written 29th October, 1912; the fire occurred 1st January, 1913, and the destruction was total.

The law suit is to determine the rights of the parties; the insured demands to be paid; the insurer declines to pay.

The errors charged fall around the defenses plead, and may be best considered in connection with the defenses. The defenses are: (1) failure of Padgett to make proper proof of loss; (2) title warranted to be in Padgett; (3) property warranted to be in active operation; (5) Padgett misrepresented that insurance on the property had been declined only by one company other than defendant.

As to "proof of loss;" technical "proof of loss" is not proof in Court of the loss.

The first is for the benefit of the company, and the duty to make it arises out of the terms of the policy; the second is for the benefit of the jury, and is made before the jury pursuant to the rules of evidence to prove a liability under the policy; and it exists independently of the technical "proof of loss."

In the very nature of the case, "the proof of loss" must only substantially conform to the requirements of the policy.

The real issue about that is, has the insured informed the insurer of the fire and all the particulars of it? That is what the insured here agreed to do.

The particular words of the policy thereabout ought to be reported.

On 21st January, 1913, twenty days after the fire, the insured made and swore to a statement which set out the circumstances of the fire. That statement ought to be reported. A copy of it was sent to the company, and the receipt of it was not denied.

The company thereafter sent a Mr. Cothran to the locus, and he talked with the insured about the fire; he desired the insured to sign a paper, which the insured declined to do, and there was no demand by Mr. Cothran, or by the company, for any further or more particular "proof of loss."

The interest both of the insurer and the insured, and that includes the interest of the public, would have been subserved by a suggestion from the company to Padgett that his "proof of loss" was not so full and exact as was required by the policy. And the failure to make such suggestion was a waiver of any right to have it. *Madden* v. *Ins. Co.,* 70 S. C. 295, 49 S. E. 855.

But the "proof of loss" that was supplied was a reasonably full and exact compliance with the general words of the agreement to make it, under the circumstances of the case. There were no particulars to report; the conflagration was the entirety.

Akin to "proof of loss" was the loss proven at the trial by the witnesses.

The defendant has excepted to the character of that proof. As is well contended by appellant, the "proof of loss" made to the company does not stand for proof in Court.

But Crymes, speaking for his principal, answered in the application that he "considered the values as stated in the application to be correct," and he "fully recòmmended the risk as free from all financial hazard;" that the "premises were clean and in good condition."

The witness, Merchant, testified that he and Crymes went to the ginhouse and listed the property and looked at it.

The witness, Padgett, testified that all the property there listed was totally destroyed by fire. The complaint alleges total destruction of it, and the answer admitted it.

There was competent proof of the existence of the property, piece by piece, and the total destruction of it.

The appellant's second contention, that the policy must run to the real owner of the thing insured, is true.

The policy stipulated that the assured was the sole owner in fee of the land upon which the outfit stood.

The fact is, that the land once belonged in fee to the wife, but she had conveyed it to her husband before the policy was written, by what, in effect, was an unwitnessed deed, for the witness signed after delivery and after the fire, and upon acknowledgment by the wife that she had signed the deed aforetime.

Had the wife conveyed to the husband the land, by a properly phrased deed to carry the fee, except it was not witnessed, that would constitute the husband the equitable owner of the fee, an interest fully capable of insurance, and as good for this, and many purposes, as a legal fee. The case is not altered that the deed was improperly witnessed.

It is not incumbent to cite authority for this statement of the law, for it is elementary.

As far as the witnesses were able to do, amidst the objection of counsel, they proved the signing by the wife; and about that there is no real ground to doubt even.

About the third defense, the warranty of profitableness, there was such a warranty. The language is, "That the

property had been profitable, and the assured has every reason to believe that it will so continue."

But Crymes, the agent, directly, and the company, through the statement in the application, knew the outfit was put up in August, 1912, that it was insured the 29th October, 1912, and that there was then no chance to say it had been profitable. The insurer knew all about that matter that the insured could know. There could be no profit without operation, and there had practically been no operation.

Upon the issue of whether the insured did warrant that the gin was in actual operation when insured, the appellant hardly quotes correctly the answer of the insured thereabout.

The question was: "Is the gin operated by owner, manager or tenant?"

The answer was: "Owner."

Was the question framed to find out if the gin was idle or going, or was it framed to find out if it was worked by its owner or by a tenant?

In the application of the Dixie Insurance Co., the question was: "Will the gin be operated this season?" And the answer to that was: "Stopped, as gasoline engine * * * is defective."

The question in the first case stated is not sufficiently definite to convict the insurer of making an untrue answer to it; or to constitute it as a guarantee that on October 20th, 1912, the gin was then being operated.

More than this, the answer was written by Crymes, the agent, and he knew the fact. If anybody was guilty of misrepresentations it was Crymes. But the answer did not plead misrepresentation; the Court charged the jury upon the effect of it, though it was not in the case; and Crymes, who knew the facts, was not sworn.

The argument here is, that Crymes and Padgett, in effect, committed a fraud on the company, and that the case thus

falls under *Knobelock* v. *Germania Sav. Bank,* 50 S. C. 259, 27 S. E. 962.

There is not a scintilla of testimony to sustain the charge of fraud.

The fifth defense has not been argued, and must be considered abandoned.

The judgment below is affirmed.